# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ARTHUR SMITH, | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Civil No. PJM 05-332 |
| | * | |
| DENTAL BENEFIT PROVIDERS INC.,[1] | * | |
| | * | |
| Defendants | * | |

# **OPINION**

Arthur Smith has filed a pro se Complaint against his former employer, Dental Benefit Providers ("DBP"), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII").  He alleges that DBP engaged in unlawful sexual harassment and retaliation.  The parties have filed cross Motions for Summary Judgment.  No hearing is necessary to dispose of the motions.  See Local R. 105.6 (D. Md. 1999).  Having considered them, the Court DENIES Smith's Motion and GRANTS that of DBP.

I.

Smith began his work with DBP in the Members Services Department as a Customer Service Representative on October 4, 1999.  Throughout his employment, he met management's expectations in most, though not all, areas of performance.  In May 2000, he was

---

[1] Smith originally named "United Health Care" as defendant rather than "Dental Benefit Providers", an apparently related entity.  Defendant claimed ineffective service of process based on the misnomer, but eventually agreed to accept service of an Amended Complaint in the name of "Dental Benefit Providers, Inc.".

1

promoted to an Integrated Voice Response position under the supervision of Tad Doyle. Previous to that, Smith was supervised by Waveney Blackman.

During his first year at DBP, Smith customarily offered his co-workers neck and head massages when they complained of back pain. Having been told about the massages, Blackman asked Smith to give her a massage and Smith willingly complied. Thereafter Blackman asked Smith for massages on a regular basis and, for a period of about six months, he admits he obliged. There came a point, however, when Smith refused to give Blackman any more massages – much, Smith alleges, to Blackman's dismay. The record is devoid of information as to when the period of consensual massages began and ended, and is unclear whether, when he ceased the massages, Blackman was still his supervisor.

What is clear is that in 2002 – roughly two and a half years after joining DBP and a little less than two years after being promoted to an IVR position under Tad Doyle – Smith began to make complaints to DBP's Human Resources Department. In 2002, he contacted DBP's informal conflict mediator, HRdirect, three times.

First, in February 2002, he complained to HRdirect about the tone Doyle used when confronting Smith about tardiness.

Next, in March 2002, he contacted HRdirect as a result of a confrontation he had with Blackman. Smith alleges that during the confrontation Blackman reacted with profanity when he accused her of being the loudest person on the floor. As a result of this complaint, HRdirect contacted both individuals and took appropriate action to mediate the issue. Thereafter, Smith advised HRdirect that he was satisfied with the actions taken and considered the issue resolved.

2

Finally, on April 15, 2002, Smith contacted HRdirect to complain about a co-worker who had confronted him about moving a plant on her desk. Smith accused the co-worker of being involved in a conspiracy with Blackman and Doyle to sabotage him at work.

At no point during any of his contacts with HRdirect did Smith complain of sexual harassment from Blackman or about the massages he had previously administered.

On April 24, 2002, DBP terminated Smith due to continued tardiness, performance issues, and an email that he sent that included inappropriate content about Blackman. One week later, however, after an investigation revealed that Doyle, in violation of company policy, had logged onto Smith's personal computer to retrieve the inappropriate email, Smith was reinstated.

Then, on May 10, 2002, Smith filed an official Internal Dispute Resolution ("IDR") complaint, alleging sexual harassment and hostile work environment based on the three incidents he had previously raised with HRdirect. After a series of interviews, DBP determined that no harassment had taken place. Though Smith indicated at the time that he did not have continuing concerns about harassment or inappropriate behavior, he nonetheless appealed the IDR decision.

Meanwhile, due to reorganization in DBP's structure, many of the Member Services functions were eliminated and on September 17, 2002, Smith, along with certain other employees, was informed that his position would be eliminated. After this announcement, however, but before the termination went into effect, the Human Resources Department received a complaint that Smith had threatened Blackman by saying: "My last day here everyone is going to know who I am and I'm going to get that black bitch." Human Resources investigated the

3

complaint, determined that Smith had indeed made it and accordingly, before the downsizing took effect, terminated his employment.

Shortly thereafter, Smith filed a Step 3 IDR appeal, renewing his complaints of May 10, 2002, and further alleging that his terminations were defamatory. After investigation, DBP determined that Smith had neither been harassed nor defamed.

On September 10 and October 23, 2002, Smith filed Charges of Discrimination with the Maryland Commission on Human Relations ("MCHR") and the EEOC. The MCHR investigated the charges and found no probable cause to substantiate the claims.

II.

A party is entitled to summary judgment if the evidence in the record "show[s] that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his favor, such inferences must "fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." Thompson Everett, Inc. v. National Cable Adver., L.P., 57 F.3d 1317, 1323 (4th Cir. 1995). A court should enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the plaintiff fails to meet this burden, the defendant should not be required to undergo "the considerable expense of preparing for and participating in a trial." Hayes v. Hambruch, 841 F.Supp. 706, 709 (D. Md. 1994) (Harvey, J.), *aff'd*, 64 F.3d 657 (4th Cir. 1995).

While intent is important in employment discrimination cases, the statutory purpose of summary judgment applies in no lesser degree to these types of cases than to commercial or other areas of litigation.  See Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985) ("The summary judgment rule would be rendered sterile, however, if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion.").  In the employment discrimination context, a subjective, even if genuine, belief of discrimination will not shield a non-moving plaintiff from a grant of summary judgment.  See Goldberg v. B. Green and Co., 836 F.2d 845, 848 (4th Cir. 1988).

### III.

Under Title VII, an employer cannot "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Discrimination actionable under the statute includes conduct that creates a sexually objectionable and hostile work environment.  Faragher v. City of Boca Raton,  524 U.S. 775, 786 (1998).  To prove sexual harassment based on a sexually hostile work environment, a plaintiff has the burden of proving that: (1) the plaintiff was harassed due to his sex; (2) the harassment was unwelcome; (3) the harassment was so severe and pervasive as to alter the conditions of employment; and (4) the harassment is imputable to the employer.  *Spicer v. Virginia*, 66 F.3d 705, 710 (4th Cir. 1995).

Smith claims that the three confrontations he reported to HRdirect in 2002, plus some sexually explicit remarks by Blackman on a separate occasion, created a sexually hostile work environment in violation of Title VII[2,3].

A.

To succeed on a sexually hostile work environment claim, it must be clear that, but for the plaintiff's sex, he would not have been harassed.  Hatsell v. Duplex Prod., Inc., 123 F.3d 766, 772 (4th Cir. 1997).  With the exception of the Blackman remarks, Smith has totally failed to demonstrate that his supervisors or his co-worker confronted him for any reason relating to his sex.  The confrontations he complains of ostensibly arose from ordinary workplace disagreements—tardiness, loud distractions, and misplaced items, not as a result of Smith being sexually harassed.  As for Smith's encounter with Blackman during which she supposedly made remarks of a personal and sexual nature, these, as discussed in the following section, were not sufficiently severe or pervasive as to be actionable.[4]  See *infra* § III.B.

---

[2] Smith does not mention the massages in support of his sexual harassment claim nor, because he voluntarily provided them to his co-workers, could he do so.  See Meritor Savings Bank, FSP v. Vinson, 477 U.S. 57, 68 (1986) ("The gravamen of any sexual harassment claim is that the alleged sexual advances were unwelcome").  The massages are relevant to his harassment claim only insofar as he alleges that the harassment began after he stopped giving them.

[3] Smith's allegation that he was terminated based on his refusal to continue to massage Blackman does not give rise to a claim for sexual harassment based on a hostile work environment.  The proper analysis for this claim is as *quid pro quo* sexual harassment.  See *infra* § IV.

[4] Smith's brief does not mention the personal and sexual comments supposedly made by Blackman, but they appear in the complaint he submitted to IDR and the Court assumes that the present Complaint before the Court refers to this incident.  The complaint to IDR states that

6

B.

Smith has also failed to show that the harassment he allegedly suffered was severe and pervasive. To be actionable under Title VII, harassment must go beyond "simple teasing, offhand comments, and isolated incidents." Faragher, 524 U.S. at 788 (internal quotation marks and citation omitted). To make this determination, the court must examine all the surrounding circumstances and analyze the complained of behavior for indications of both its objective and subjective severity. Id. at 787.

Objectively speaking, even taken together the three confrontations complained of to HRdirect were not so severe that they would unreasonably interfere with an employee's work performance. See id. at 788. The sporadic nature of the confrontations—three isolated incidents reported over two years of employment—effectively disproves any claim of severity. See, e.g., Patterson v. County of Fairfax, 2000 U.S. App. LEXIS 11009, at *13 (4th Cir. May 18, 2000) (finding that seven incidents of verbal assault in a seven year time period did not reach the level of severity required for a Title VII claim); Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996) (citing Baskerville v. Culligan Int'l Co., 50 F.3d 428, 431 (7th Cir. 1995)) ("A handful of comments spread over months is unlikely to have so great an emotional impact as a concentrated or incessant barrage."). As for the one isolated incident of sex-related comments allegedly made by Blackman, see *supra* note 4, these too, as a matter of law, fail to satisfy the requirement of severity and pervasiveness. See Wolff v. Northrop

---

Blackman engaged in a lengthy rant with Smith about why she would not have sex with him, then initiated conversations with other co-workers about Smith's tongue.

7

Grumman Sys. Corp., 111 F. App'x. 152, 153 (4th Cir. 2004) (holding that the use of sexual and profane language at a meeting did not constitute sexual harassment)

Finally, none of the incidents was severe or pervasive when examined on a subjective level.  Nothing in the record corroborates Smith's contention that he subjectively construed the confrontations to be harassment.  Indeed, Smith essentially confirms that at no point during his employment did the behavior of Blackman or Doyle affect his ability to perform his tasks.  Beyond that, he made no mention of sexual harassment in his complaints to HRdirect, indicating on one occasion that he felt satisfied that the issues had been resolved.

As a matter of law, Smith was not subjected to a sexually hostile work environment.

IV.

Smith, however, also implies that his decision to stop giving massages to Blackman—in effect *quid pro quo* sexual harassment — provoked the three aforementioned workplace confrontations, his termination, or all of them.

Absent direct evidence, as is the case here, to establish a *prima facie* case for *quid pro quo* sexual harassment, an employee must demonstrate that:

> 1. The employee belongs to a protected group.
>
> 2. The employee was subject to unwelcome sexual harassment.
>
> 3. The harassment complained of was based upon sex.
>
> 4. The employee's reaction to the harassment affected tangible aspects of the employee's compensation, terms, conditions, or privileges of employment. The acceptance or rejection of the harassment must be an express or implied condition to the receipt of a job benefit or cause of a tangible job detriment to create liability. Further, as in typical disparate treatment cases, the employee must prove that he was deprived of a job

>benefit which he was otherwise qualified to receive because of the employer's use of a prohibited criterion in making the employment decision.
>
>5. The employer knew or should have known of the harassment and took no effective remedial action.

Brown v. Perry, 184 F.3d 388, 393 (4th Cir. 1999).  The fifth element is "automatically met" when the harassment is alleged to have been perpetrated by a supervisor.  Id.  If a *prima facie* case is made, the burden shifts to the defendant to establish a legitimate purpose behind the employment decision.  See, e.g., Rachel-Smith v. FTData, Inc., 247 F. Supp. 2d 734, 745 (D. Md. 2003).  Once defendant does so, plaintiff can only succeed by proving that these reasons are purely pretextual.  Id.

      Smith's suggestion is that he suffered a tangible job detriment when he elected to cease giving massages to Blackman.  While he fails to state the immediate detriment that arose from that fact, it is clear that only his termination, not any of the three incidents associated with his HRdirect complaints, may be regarded as a tangible job detriment.  See Burlington Indus. v. Ellerth, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

      That said, the fact remains that Smith has not shown–nor can he–that DBP's stated non-discriminatory reason for firing him was pretextual.  Purely and simply, there is no basis to doubt that he was fired because he threatened Blackman.  Accordingly, he states no viable claim for *quid pro quo* sexual harassment.  See Brockman v. Snow, 217 Fed.Appx. 201,

9

208 (4th Cir. 2007) (denying Title VII claim where defendant-employer offered substantial and uncontested evidence of its legitimate reason for terminating plaintiff-employee).

V.

Smith also raises a retaliation claim under Title VII.[5]  Because he offers no direct evidence of discriminatory intent, he must proceed under the McDonnell Douglas calculus to establish a circumstantial case.  Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989).  Under that framework, a plaintiff must first establish a *prima facie* case by proving that: (1) his employer took an adverse employment action against him; (2) he engaged in a protected activity; and (3) there was a causal link between the two events.  Id.  Thereafter, the burden shifts to defendant to establish a legitimate non-retaliatory reason for its actions.  Should defendant do so, the plaintiff must prove that the employer's proffered reasons are pretextual in order to succeed on his claim.  Id.

Although Smith bases his retaliation claim on the three reported confrontations, again, as previously discussed, none of these incidents constitutes an adverse employment action.  Burlington N. & Santa Fe Rwy Co. v. White, 126 S.Ct. 2405, 2415 (2006) (stating that an adverse employment action must be materially adverse to the employment conditions of a reasonable employee).  At most, the confrontations were "trivial harms" that, while perhaps disconcerting, did not adversely affect Smith's employment conditions.  See id. at

---

[5] Section 704(a) of Title VII provides that "(i)t shall be unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made unlawful employment practice by this [title]."  42 U.S.C. § 2000e-3(a).

2421. Indeed, Smith concedes that he was able to continue his work and suffered no decrease in productivity as a result of the incidents.

The Court accepts however, that the termination of Smith's employment constituted an adverse employment action and as such, satisfies the first requirement for a retaliation claim. See White, 126 S.Ct. at 2413 (2006).

Further, the Court finds that Smith engaged in a protected activity, the second requirement for retaliation, when he submitted complaints to HRdirect and IDR.[6] In order to establish a *prima facie* retaliation claim, it remains only for him to furnish evidence of a link between his complaints and his termination. Williams, 871 F.2d at 457.

That is the sticking point in his claim. He has failed to provide any evidence of a causal link between his complaints and his termination. While his termination may have been fairly proximate in time to his complaints four months earlier so as to suggest a possible causal link between the two, see, e.g., Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001) (holding that temporal proximity between protected activity and adverse employment action can suggest causation if "very close"); Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004) (causal link established for retaliation claim when employer took adverse employment action at the first available opportunity after learning of employee's protected actions); But see, Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997) (determining

---

[6] Contrary to his assertions in the Amended Complaint, merely telling Blackman that he would no longer give her massages did not constitute a protected activity because there is no indication that he protested giving the massages. He simply stopped giving them; he did not make an actual complaint. See EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 406 (2005) (stating that plaintiff takes protected actions if he opposes conduct that is either prohibited under Title VII or that he reasonably believes to be unlawful).

that a three month period between adverse employment action and protected activity is too long to infer causation), DBP nonetheless had a legitimate reason for terminating his employment, viz., his threat to Blackman.  See *supra* § IV.  Smith offers no evidence to suggest that this proffered reason was merely pretextual, in consequence of which, he makes no viable claim for retaliation.  See Brockman, 217 Fed.Appx. At 208.

VI.

Smith's Motion for Summary Judgment alleges that DBP engaged in malicious and intentional misrepresentation regarding its name and sufficiency of service of process.  On this basis, he asserts that he is entitled to judgment as a matter of law.  Not only is the requested remedy fanciful, it is totally misinformed.  A party has a right to challenge service of process when it is not sued in its proper name.  See U.S. v. A.H. Fischer Lumber Co., 162 F.2d 872, 873 (4th Cir. 1947) ("[defendant-corporation] had to the right to be accurately named in the process and pleadings of the court...and the misnomer was properly raised by motion to dismiss").  DBP acted properly and the issue of misnomer was resolved promptly enough.

Smith's Motion for Summary Judgment is DENIED.

VII.

DBP has asked the Court to award it attorney's fees due to the frivolous nature of Smith's Motion.  While Federal Rule Civil Procedure 11 requires the imposition of sanctions for pleadings that are "not grounded in law or fact," the trial court has broad discretion in deciding when such sanctions are appropriate.  Edmond v. Consumer Protection Division, 934 F.2d 1304, 1313 (4th Cir. 1991).  Although the Court finds Smith's Motion wholly without merit, it takes note of the fact that Smith is acting pro se and is entitled to at least some

accommodation on that account.  See United States v. Garcia, 65 F.3d 17,19 (4th Cir. 1995).

Accordingly, the Court declines to award DBP attorney's fees.

## VIII.

For all these reasons, DBP's Motion for Summary Judgment will be GRANTED.  Smith's Motion for Summary Judgment will be DENIED.  The case will therefore be CLOSED.

A separate Order will ISSUE.

                                                          /s/
                                         PETER J. MESSITTE
June 29, 2007                     UNITED STATES DISTRICT JUDGE